**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MERRIMACK MUTUAL FIRE | : | |
| INSURANCE CO., | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:22-CV-00041 (JCH) |
| v. | : | |
| | : | |
| ADAM CLAWSON, | : | |
| TONY CLAWSON, | : | |
| ARLENE CLAWSON, and | : | |
| HOWARD J. WICKER, | : | |
| Administrator of the Estate of | : | |
| Victoria Blessig | : | |
|     Defendants. | : | SEPTEMBER 26, 2023 |

**RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 42)**

## I.    INTRODUCTION

Plaintiff Merrimack Mutual Fire Insurance Company ("Merrimack") brings this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, against defendants Adam Clawson, Tony Clawson, Arlene Clawson (collectively, "the Clawsons"), and Howard J. Wicker ("Wicker") in his capacity as the Administrator of the Estate of Victoria Blessig ("Blessig"). See Complaint ("Compl.") (Doc. No. 1).

Before this court is the plaintiff's Motion for Summary Judgment as to Count One of the Complaint seeking a declaratory judgment that it has no duty to defend the Clawsons under its Homeowners Insurance Policy with respect to an underlying action commenced by Wicker. See Merrimack's Motion for Summary Judgement ("Pl.'s Mot.") (Doc. No. 42); Notice of Merrimack Regarding Motion for Summary Judgment ("Pl.'s Notice") (Doc. No. 43). The Clawsons oppose the Motion. See Memorandum of Law in

1

Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Opp.") (Doc. No. 46).

For the reasons set forth below, the Motion is granted.

## II.    BACKGROUND

### A.    Factual Background[1]

#### 1.    Homeowners Insurance Policy

From October 1, 2019, to October 1, 2020, Tony and Arlene Clawson held a

Homeowners Policy and Personal Umbrella Policy ("Umbrella Policy"), both of which

were issued by Merrimack.  See Defendants' Local Rule 56a(2) Statement (Doc. No.

47); Plaintiff's Local Rule 56a(1) Statement (Doc. No. 44); Homeowners Policy, Pl.'s Ex.

A, at 1 (Doc. No. 43-1): Personal Umbrella Policy, Pl.'s Ex. B, at 1 (Doc. No. 43-2).

The Homeowners Policy provided that, in the event where "a claim is made or a

suit is brought against [the insured] for damages because of 'bodily injury' or 'property

damage' caused by an 'occurrence' to which this coverage applies," Merrimack will,

inter alia, "[p]rovide a defense at [Merrimack's] expense . . . even if the suit is

groundless, false or fraudulent."  Homeowners Policy at 31.  However, the Policy further

provides that Merrimack's duty to defend excludes suits for damages because of:

> "Bodily injury" or "property damage" arising out of the use, sale, manufacture,
> delivery, transfer or possession by any person of a Controlled Substance as
> defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.
> Controlled Substances include but are not limited to cocaine, LSD, marijuana and
> all narcotic drugs. However, this exclusion does not apply to the legitimate use of
> prescription drugs by a person following the lawful orders of a licensed health
> care professional.

---

[1] Because this case addresses an insurer's duty to defend, and because neither party disputes
their authenticity, the court draws from the relevant insurance policies and the underlying Superior Court
complaint in summarizing the material facts.  See Cmty. Action for Greater Middlesex Cnty., Inc. v. Am.
All. Ins. Co., 254 Conn. 387, 395 (2000) (noting that "duty to defend" cases are "determined by comparing
the allegations of [the underlying] complaint with the terms of the insurance policy").

Id. at 34.  The Umbrella Policy contains nearly identical provisions.  See Umbrella Policy at 9-11.

> 2.    Superior Court Complaint

On November 8, 2021, Wicker, in his capacity as the Administrator of the Estate of Blessig, filed an action in Connecticut Superior Court against the Clawsons under section 52-555 of the Connecticut General Statutes ("section 52-555"), seeking to hold the Clawsons liable for the wrongful death of Blessig.  See Superior Court Complaint ("Superior Ct. Compl."), Pl.'s Ex. C (Doc. No. 43-3).  The Complaint alleges that, from January 23, 2020, to January 24, 2020, Adam Clawson provided illegal drugs to Blessig at the Clawson family residence, which she consumed.  Id. at ¶ 5.  According to the Complaint, Blessig subsequently suffered medical distress and required medical attention, see id. at ¶¶ 6-12; Adam Clawson, however, failed to seek medical attention for Blessig, despite knowing that she was in distress, see id. at ¶¶ 11-12.

The Complaint alleges two Counts against Adam Clawson, both brought pursuant to section 52-555. Count One alleges that Blessig's death was caused by the negligence of Adam Clawson on the bases that:

a.    An ordinary person in Adam Clawson's position[2] should have known to call 911 or otherwise seek medical assistance;

b.    An ordinary person in Adam Clawson's position would or should have anticipated that Victoria Blessig was in distress and required medical attention; and

c.    An ordinary person in Adam Clawson's position knew or should have known that injuries were reasonably foreseeable.

---

[2] That is, one "[p]roviding drugs" to the decedent.  Superior Ct. Compl. ¶ 13(b).

Id. at ¶ 14.  Count Two alleges that Blessig's death was caused by the recklessness of Adam Clawson on the bases that:

    a.  [Adam Clawson] provided drugs to Victoria Blessig;

    b.  [Adam Clawson] knew that Victoria Blessig would ingest the drugs provided to her;

    c.  [Adam Clawson] knew that injuries were reasonably foreseeable;

    d.  [Adam Clawson] knew that Victoria Blessig's consumption of illegal drugs could foreseeably result in injury and death; [and]

    e.  [Adam Clawson] assumed the responsibility of caring for Victoria Blessig, who was incapacitated, and then failed to provided reasonable care when he observed signs of distress[.]

Id. at ¶ 23.  The Complaint further alleges that Adam's parents, Tony and Arlene Clawson, knew that their son frequently used illegal drugs on their premises and provided them to guests, id. at 6,[3] and, as a result, they "owed a duty to Victoria Blessig, their social invitee, to prevent the provision of drugs to her at the Clawson residence and to prevent the reasonably foreseeable injuries that could flow therefrom", id.  Count Three thus alleges that Blessig's death was caused by the negligence of Tony and Arlene Clawson on the bases that:

    a.  [Tony and Arlene Clawson] failed to reasonably inspect and maintain the Clawson residence in order to render the premises reasonably safe;

    b.  [Tony and Arlene Clawson] were aware, or should have been aware, that drugs were being used on their property for a long period of time and failed to stop it;

    c.  [Tony and Arlene Clawson] were aware, or should have been aware, that Victoria Blessig was visiting the property for the purpose of obtaining and using drugs with Adam Clawson, and they should have prevented it;

---

[3] The numbering for Count Three of the Superior Court Complaint is incorrectly ordered.  To prevent confusion, the court will cite to page numbers for the allegations under Count Three.

    d.   [Tony and Arlene Clawson] were aware, or should have been aware, that Adam Clawson was supplying drugs to social guests while on their premises and they should have prevented it;

    e.   [Tony and Arlene Clawson] were aware, or should have been aware, that supplying and using drugs is extremely dangerous and such activities can result in serious injury or death;

    f.   [Tony and Arlene Clawson] were aware, or should have been aware, that Victoria Blessig was in medical distress while at their residence on January 23-24, 2020, and did not seek medical attention for her; [and]

    g.   [Tony and Arlene Clawson] failed to protect Victoria Blessig from the foreseeable harm associated with the dangerous activities regularly occurring at the Clawson residence of which defendant[s] were aware, or should have been aware.

Id. at 6-7.[4]

    B.    Procedural Background

On January 10, 2022, Merrimack filed its Complaint in this action against the Clawsons and Wicker, pursuant to this court's diversity jurisdiction.  See Compl.  Count One of the Complaint seeks a declaratory judgment that Merrimack has no duty to defend the Clawsons in the Superior Court action.  See id. at ¶¶ 25-30.  Count Two also seeks a declaratory judgment that Merrimack has no duty to indemnify the Clawsons in the Superior Court action.  See id. at ¶¶ 31-32.  On July 22, 2022, this court stayed Count Two pending the resolution of the underlying Superior Court action.  See Minute Entry (Doc. No. 40).  On September 20, 2022, Merrimack moved for summary judgment as to Count One.  See Pl.'s Mot.[5]  The Clawsons oppose the Motion.  See Defs.' Opp.

---

[4] In support of its Motion for Summary Judgment, Merrimack has also provided a copy of Blessig's death certificate.  See Death Certificate, Pl.'s Ex. D (Doc. No. 43-4).  However, because an insurer's duty to defend is generally determined solely by the allegations in the underlying complaint and the relevant insurance policy, the court will not consider the death certificate for purposes of this Motion.

[5] Merrimack originally moved for summary judgment as to both Counts.  See Merrimack's Memorandum of Law in Support of its Motion for Summary Judgment ("Pl.'s Mem."), at 2 (Doc. No. 43).

III.    **LEGAL STANDARD**

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

IV.    **DISCUSSION**

Under Connecticut law, "[t]he question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the underlying] complaint with the terms of the insurance policy."  Cmty.

---

On September 22, 2022, Merrimack filed a Notice that, "[i]nsofar as the Court stayed Count II of the Complaint relating to the issue of the duty to indemnify, Merrimack withdraws the portion of the motion addressing the duty to indemnify without prejudice to renewing its request upon removal of the stay."  See Pl.'s Notice (Doc. No. 45).

Action for Greater Middlesex Cnty., Inc. v. Am. All. Ins. Co., 254 Conn. 387, 395 (2000).

A liability insurer "has a duty to defend its insured in a pending lawsuit if the pleadings

allege a covered occurrence, even though facts outside the four corners of those

pleadings indicate that the claim may be meritless or not covered."  See Hartford Cas.

Ins. Co. v. Litchfield Mut. Fire Ins. Co., 274 Conn. 457, 464 (2005) (citing QSP, Inc. v.

Aetna Cas. & Sur. Co., 256 Conn. 343, 352 (2001)).  If an allegation in a complaint falls

even possibly within the insurance coverage, then the company has a duty to defend

the insured.  See id. at 463.  Indeed, this court views Connecticut law as broadly

supporting the duty to defend.  However, "[d]espite the breadth of this approach,

[Connecticut courts] have recognized the necessary limits of this rule," and they "will not

predicate the duty to defend on 'a reading of the complaint that is . . . conceivable but

tortured and unreasonable.'"  Misti, LLC v. Travelers Prop. Cas. Co. of Am., 308 Conn.

146, 156 (2013) (quoting QSP, 256 Conn. at 374).

        Merrimack contends that it has no duty to defend the Clawsons in the underlying

Superior Court action because Wicker's "alleged claims and damages are excluded by

the clear and unambiguous 'Controlled Substances' exclusion."  Pl.'s Mem. at 6.  The

exclusion provides that Merrimack has no duty to defend its insured in suits for

damages because of "'[b]odily injury' or 'property damage' arising out of the use, sale,

manufacture, delivery, transfer or possession by any person of a Controlled

Substance . . . ."  See Homeowners Policy at 34 (emphasis added); accord Umbrella

Policy at 11.  Courts have held that the term "arising out of" is "broad", and that, "for

liability for an accident or an injury to be said to arise out of an occurrence . . . it is

sufficient to show only that the accident or injury was connected with, had its origins in,

grew out of, flowed from, or was incident to that occurrence . . . ." <u>Koscinski v. Farm Fam. Cas. Ins. Co.</u>, 346 F. Supp. 248, 254 (D. Conn. 2018) (quoting <u>QSP</u>, 256 Conn. at 373-74).

In the case at bar, all three Counts of the underlying Superior Court Complaint make allegations regarding drug use.  Counts One and Two allege that Adam Clawson provided Blessig with drugs.  <u>See</u> Superior Ct. Compl. at ¶¶ 1-27.  Count Three incorporates the allegations in Count One and alleges that Tony and Arlene Clawson "knew that Adam Clawson regularly used drugs at the Clawson residence and that he had guests over to consume illegal drugs with him, including Victoria Blessig." <u>Id.</u> at 6-7.  The Complaint explicitly states that the drugs were "illegal" and were provided to Blessig "in violation of [Conn. Gen. Stat. §] 21a-278".[6]  <u>See</u> Superior Ct. Compl. at ¶¶ 18, 23.  The Complaint also alleges that, "[a]s a result of providing and using drugs, Victoria Blessig suffered medical distress in that she was rendered unconscious, and was unable to be awakened by the Defendant", <u>id.</u> at ¶ 22, and, because of Adam Clawson's subsequent failure to seek medical attention, Blessig "suffered a fatal overdose on January 24, 2020", <u>id.</u> at ¶ 12.

Based on the "four corners" of the Superior Court Complaint, the court finds that Blessig's injuries, as alleged, clearly arose out of her use of a controlled substance. The Complaint repeatedly attributes the medical emergency that Blessig suffered to her use of "drugs" and "illegal drugs", and it explicitly states that Blessig suffered a "fatal

---

[6] As the plaintiff correctly notes, the statute references heroin, methadone, cocaine, lysergic acid diethylamide, as well as "narcotic substance[s]", "hallucinogenic substance[s]", "amphetamine-type substance[s]", and "cannabis-type substance[s]." <u>See</u> Conn. Gen. Stat. § 21a-278.  Each of the aforementioned drugs are controlled substances under federal law.  <u>See</u> 21 U.S.C.A. § 812.

overdose".  See id.  The Complaint thus makes clear that Blessig's consumption and use of controlled substances was the "operative event giving rise to", or precipitating, "[her] injuries" and death.  See United Servs. Auto. Ass'n v. Kaschel, 84 Conn. App. 139, 146 (2004); see also Lift-Up, Inc. v. Colony Ins. Co., 206 Conn. App. 855, 872-874 (2021) (finding that, even if "the discrete acts that proximately caused [the personal injury plaintiff']'s injuries were unintentional and do not meet the elements of a common-law negligent assault or battery under Connecticut law", "the claims are nevertheless barred by the policy's exclusions provision [for assault tor battery] because [the personal injury plaintiff's] injuries 'arose out of' conduct constituting an intentional assault or battery").  At no point in the Complaint does Wicker allege or even suggest an alternative reason as to why Blessig suffered the medical emergency that resulted in her tragic death, or the medical distress from which the Clawsons failed to protect her. In turn, the Policies exclude bodily injury claims "arising out of" drug use: it is clear that even the causation theory of the defendants—that Blessig's injury resulted from the Clawsons not obtaining medical care—"had its origins in, grew out of, flowed from, or was incident to" Blessig using a controlled substance.  Koscinski, 346 F. Supp. at 254 (quoting QSP, 256 Conn. at 373-74).  Thus, the court finds that the Complaint is unambiguous—it would be a tortured reading to suggest that Blessig's death was "unrelated" to her use and consumption of controlled substances.  See id. at 255 (refusing to "read [a] . . . complaint to allege, as an alternative possibility, that [a] decedent's becoming ill, unconscious, and ultimately passing away was entirely unrelated to her [drug] use" in part because such a reading "torture[d] [the complaint's] plain language").

The Clawsons argue that, while the controlled substances exclusion may apply to certain allegations in the Complaint, the Complaint contains additional factual allegations that are independent of, and can be separated from, the allegations regarding drug use and consumption.  The Clawsons cite the allegations that "Blessig's death was caused by" Adam Clawson's negligent failure to seek medical assistance when Blessig was in distress, see, e.g., Superior Ct. Compl. at ¶¶ 6, 7-10, 14-15; accord Defs.' Opp. at 14-15, and that Tony and Arlene Clawson similarly failed to seek medical attention for Blessig, see Superior Ct. Compl. at 7.  The Clawsons assert that these allegations, standing alone, state plausible, legally sufficient claims of negligence that fall outside the controlled substances exclusion.

The court is not persuaded.  As the Second Circuit has affirmed, under Connecticut law, the duty to defend "rests on the substantive thrust of the complaint, and the surrounding facts."  R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co., 287 F.3d 242, 246 (2d Cir. 2002).  Even if these allegations, standing alone, technically state an independent and legally sufficient claim for negligence—i.e., that the defendants failed to timely seek medical attention for Blessig while she was in medical distress, and that failure caused her death—the Complaint itself directly and repeatedly connects these allegations to Blessig's use and consumption of drugs.  See, e.g., Superior Ct. Compl. at ¶ 11 ("Defendant did not seek medical attention, did not engage in reasonable efforts to wake [Blessig] up, and did not act with reasonable concern, although he knew that she had ingested drugs and could not be awakened." (emphasis added)); id. at ¶ 22 ("As a result of providing and using drugs, Victoria Blessig suffered medical distress in that she was rendered unconscious, and was unable to be awakened by the Defendant.

Despite the fact that the Defendant observed the above mentioned signs of medical distress, the Defendant failed to seek medical assistance." (emphasis added)); id. at 6 (stating that Tony and Arlene Clawson had a duty "to prevent the provision of drugs to [Blessig] at the Clawson residence and to prevent the reasonably foreseeable injuries that could flow therefrom"). Indeed, the Complaint explicitly states that Blessig suffered a "fatal overdose", id. at ¶ 12, and all three Counts of the Complaint repeatedly mention drug use. By its plain terms, the Complaint does not "leave open the possibility" that Blessig's medical emergency and resultant death did not "arise out of" her use of controlled substances. C.f. Town of Monroe v. Discover Prop. & Cas. Ins. Co., 169 Conn. App. 644, 651 (2016) ("Because the complaint left open the possibility that the alleged negligent misrepresentation did not arise out of a contract, the defendant's duty to defend was not precluded by the contract exclusion."). Any other reading of the Complaint—while perhaps conceivable—would be, in the view of this court, tortured and unreasonable. Thus, the court finds that, based on the specific facts alleged in the Complaint, Blessig's death, while proximately caused in part by the Clawsons failing to seek timely medical assistance, clearly "arose out of" her drug use. The allegations therefore fall under the controlled substances exclusion.

The defendants urge the court to adopt the reasoning in Skolnik v. Allied Property, an Illinois case. There, the court found, under extremely similar facts, that the insurer had a duty to defend the insured because the insured's negligent "fail[ure] to request emergency medical assistance" constituted a "potential separate and independent cause of [the decedent]'s death." See Skolnik v. Allied Prop. & Cas. Ins. Co., 399 Ill. Dec. 171, 180 (Ill. App. Ct. 2015). However, case law from other states,

while often persuasive, is not binding on this court.  Moreover, although the facts of Skolnik are undoubtedly apposite to the case at bar, some of the underlying legal reasoning in Skolnik sits uneasily, in this court's view, with controlling Connecticut case law.  Compare id. ("If a proximate cause of an injury comes within the included coverage of an insurance policy, the coverage is not voided merely because the policy excludes an additional proximate cause of the injury."), with Lift-Up, 206 Conn. App. at 874 (stating that it is "well settled that an injury need not be 'proximately caused' by an act or occurrence in order to arise out of such an act or occurrence within the meaning of an insurance" exclusion and that "[i]t is sufficient to show more broadly that an accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' an . . . occurrence" (emphasis in original) (internal citation omitted)).  It appears to this court that the law underlying Skolnik's conclusion is not the law of Connecticut.  As such, the court declines to apply Skolnik to the case at bar.

In sum, the court finds that the Complaint, under its plain terms, falls under the controlled substances exclusion of the Homeowners Policy and the Umbrella Policy.  As such, Merrimack is not obligated to defend the Clawsons in the Superior Court action. The Motion for Summary Judgment is thus granted.

V.       CONCLUSION

For the reasons stated above, the Motion for Summary Judgment (Doc. No. 42) is granted.  Given that the court has held that there is not a duty to defend because the defendants are not covered by the policy, it would appear to the court that Count Two should be dismissed.  The parties are ordered to file a brief pleading indicating if they object to the dismissal of Count Two by October 16, 2023.

**SO ORDERED.**

Dated at New Haven, Connecticut this 26th day of September 2023.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge